**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

| | |
|---|---|
| IPC THE HOSPITALIST MANAGEMENT COMPANY, LLC, | C/A NO. |
| Plaintiff, | |
| v. | **NOTICE OF REMOVAL** |
| KIMBERLY BERCHEN, | |
| Defendant. | |

<u>**Exhibit A**</u>
**Pleadings Filed in the Superior Court of Buncombe County, Case No. 21-CVS-00098**

# STATE OF NORTH CAROLINA

_____ BUNCOMBE _____ County

FILED

2021 JAN -7 P 12: 21

BUNCOMBE COUNTY, C.S.

BY_____

In The General Court Of Justice
☐ District ☒ Superior Court Division

## GENERAL CIVIL ACTION COVER SHEET

☒ INITIAL FILING  ☐ SUBSEQUENT FILING

Rule 5(b) of the General Rules of Practice for the Superior and District Courts

| | |
|---|---|
| **Name And Address Of Plaintiff 1**<br>IPC THE HOSPITALIST MANAGEMENT COMPANY, LLC | |
| **Name And Address Of Plaintiff 2** | |

**VERSUS**

| | |
|---|---|
| **Name And Address Of Defendant 1**<br>KIMBERLY BERCHEN<br>468 Cedar Lane<br><br>Arden　　　　　NC　　28704 | |
| Summons Submitted ☒ Yes ☐ No | |
| **Name And Address Of Defendant 2** | |
| Summons Submitted ☐ Yes ☐ No | |

**Name And Address Of Attorney Or Party, If Not Represented**
(complete for initial appearance or change of address)
Benjamin P. Fryer
FordHarrison LLP
6000 Fairview Road, Suite 1415
Charlotte　　　　　　　　　　NC　　28210

| Telephone No.<br>980-282-1900 | Cellular Telephone No. |
|---|---|
| NC Attorney Bar No.<br>39254 | Attorney Email Address<br>bfryer@fordharrison.com |

☒ Initial Appearance in Case  ☐ Change of Address

| Name Of Firm<br>FordHarrison LLP | Fax No.<br>980-282-1949 |
|---|---|

Counsel For
☒ All Plaintiffs  ☐ All Defendants  ☐ Only: (list party(ies) represented)

☐ Jury Demanded In Pleading  ☐ Complex Litigation  ☐ Stipulate to Arbitration

## TYPE OF PLEADING

_(check all that apply)_

| | |
|---|---|
| ☐ Amend (AMND) | ☐ Failure To State A Claim (FASC) |
| ☐ Amended Answer/Reply (AMND-Response) | ☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR) |
| ☐ Amended Complaint (AMND) | ☐ Improper Venue/Division (IMVN) |
| ☐ Assess Costs (COST) | ☐ Including Attorney's Fees (ATTY) |
| ☐ Answer/Reply (ANSW-Response) _(see Note)_ | ☐ Intervene (INTR) |
| ☐ Change Venue (CHVN) | ☐ Interplead (OTHR) |
| ☒ Complaint (COMP) | ☐ Lack Of Jurisdiction (Person) (LJPN) |
| ☐ Confession Of Judgment (CNFJ) | ☐ Lack Of Jurisdiction (Subject Matter) (LJSM) |
| ☐ Consent Order (CONS) | ☐ Modification Of Child Support In IV-D Actions (MSUP) |
| ☐ Consolidate (CNSL) | ☐ Notice Of Dismissal With Or Without Prejudice (VOLD) |
| ☐ Contempt (CNTP) | ☐ Petition To Sue As Indigent (OTHR) |
| ☐ Continue (CNTN) | ☐ Rule 12 Motion In Lieu Of Answer (MDLA) |
| ☐ Compel (CMPL) | ☐ Sanctions (SANC) |
| ☐ Counterclaim (CTCL) _Assess Court Costs_ | ☐ Set Aside (OTHR) |
| ☐ Crossclaim _(list on back)_ (CRSS) _Assess Court Costs_ | ☐ Show Cause (SHOW) |
| ☐ Dismiss (DISM) _Assess Court Costs_ | ☐ Transfer (TRFR) |
| ☐ Exempt/Waive Mediation (EXMD) | ☐ Third Party Complaint _(list Third Party Defendants on back)_ (TPCL) |
| ☐ Extend Statute Of Limitations, Rule 9 (ESOL) | ☐ Vacate/Modify Judgment (VCMD) |
| ☐ Extend Time For Complaint (EXCO) | ☐ Withdraw As Counsel (WDCN) |
| ☐ Failure To Join Necessary Party (FJNP) | ☐ Other _(specify and list each separately)_ |

**NOTE:** _All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include either a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet._

AOC-CV-751, Rev. 3/19, © 2019 Administrative Office of the Courts　　　(Over)

## CLAIMS FOR RELIEF

| | | |
|---|---|---|
| ☐ Administrative Appeal (ADMA) | ☐ Limited Driving Privilege - Out-Of-State | ☐ Product Liability (PROD) |
| ☐ Appointment Of Receiver (APRC) |    Convictions (PLDP) | ☐ Real Property (RLPR) |
| ☐ Attachment/Garnishment (ATTC) | ☐ Medical Malpractice (MDML) | ☐ Specific Performance (SPPR) |
| ☐ Claim And Delivery (CLMD) | ☐ Minor Settlement (MSTL) | ☐ Other *(specify and list each separately)* |
| ☐ Collection On Account (ACCT) | ☐ Money Owed (MNYO) | |
| ☐ Condemnation (CNDM) | ☐ Negligence - Motor Vehicle (MVNG) | |
| ☒ Contract (CNTR) | ☐ Negligence - Other (NEGO) | |
| ☐ Discovery Scheduling Order (DSCH) | ☐ Motor Vehicle Lien G.S. Chapter 44A (MVLN) | |
| ☒ Injunction (INJU) | ☐ Possession Of Personal Property (POPP) | |

| Date | Signature Of Attorney/Party |
|---|---|
| 01/06/2021 | *Benjamin Page* |

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
| | |
| | |
| | |
| | |
| | |

| No. | ☐ Additional Defendant(s)    ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|
| | | ☐ Yes   ☐ No |
| | | ☐ Yes   ☐ No |
| | | ☐ Yes   ☐ No |
| | | ☐ Yes   ☐ No |
| | | ☐ Yes   ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

*Defendant(s) Against Whom Crossclaim Asserted*

**STATE OF NORTH CAROLINA**

**COUNTY OF BUNCOMBE**

**IN THE GENERAL COURT OF JUSTICE**
**SUPERIOR COURT DIVISION**

**CASE NO.** 21CV 00098

IPC THE HOSPITALIST MANAGEMENT
COMPANY, LLC,

Plaintiff,

v.

KIMBERLY BERCHEN,

Defendant.

**VERIFIED COMPLAINT**

Plaintiff IPC The Hospitalist Management Company, LLC ("IPC") files this Verified Complaint against Defendant Kimberly Berchen complaining as follows:

**INTRODUCTION**

1.

This is an action commenced by IPC against the Defendant for damages, injunctive, and other relief arising out of the Defendant's breach of her separation agreement with IPC. IPC and its affiliated company, Inpatient Consultants of North Carolina, PC ("Inpatient Consultants"), furnish highly-skilled medical clinicians to hospitals and medical facilities. Defendant, a former IPC employee, is now an executive with Gaps Health, Inc. ("Gaps Health"), a direct competitor of IPC and Inpatient Consultants. Despite her promises and contractual obligations, Defendant disclosed confidential information to lure an Inpatient Consultants employee to resign her employment and join Gaps Health. IPC brings this action to stop Defendant's contract breaches and to recover for the damages she has caused.

1

## PARTIES

2.

IPC is a Delaware limited liability company with a principal place of business in California.

3.

With Inpatient Consultants, IPC places highly-skilled clinicians, such as doctors, physician assistants, and nurse practitioners, in post-acute and long term care facilities, including skilled nursing facilities, nursing homes, assisted living facilities, adult care homes, independent living facilities, and hospices. These clinicians provide a range of medical care and therapy services to support patients' recovery from illness or management of a chronic illness or disability.

4.

Defendant is a former IPC employee. Defendant is bound by a Confidential Settlement Agreement and Release dated May 10, 2020 (the "Agreement"). A true and correct copy of that agreement is attached hereto as Exhibit A. Upon information and belief, Defendant currently resides at 468 Cedar Lane, Arden, NC 28704.

## JURISDICTION

5.

This Court has subject matter jurisdiction over this action and personal jurisdiction over the Defendant under N.C. Gen. Stat. §§ 1-75.4(1) and (3), pursuant to her residence and conduct of business within the State of North Carolina, as well as her activity within North Carolina in breach of contract.

2

6.

Venue is proper in this Court under N.C. Gen. Stat. § 1-82 because Defendant is a resident of Buncombe County.

7.

The amount in controversy exceeds the amount of $25,000 for jurisdiction in the Superior Court.

## **GENERAL ALLEGATIONS**

### **Defendant's Employment with IPC**

8.

Defendant began her employment with IPC in November 2015 as a Clinical Practice Manager. However, IPC promoted Defendant several times. In 2019, Defendant was promoted first to Director of Operations of IPC's post-acute care business. That same year, Defendant was promoted to regional Vice President of Operations.

9.

In these roles, Defendant was responsible, in part, for maintaining and expanding IPC's business relationships with client medical facilities, and recruiting, training, and building teams of talented clinicians. To perform those duties, Defendant had increasing access to clients and clinicians, as well as broad access to IPC's most confidential information, including information regarding their business, legal, contractual, personnel, and financial affairs. Due to the close connectedness of IPC's business with that of its corporate affiliates, IPC's confidential information included similar information of those affiliates. In her role, therefore, Defendant was entrusted with regular and significant access to the confidential information of IPC's affiliates.

3

## The Agreement and Defendant's Confidentiality Obligations

10.

Defendant's employment with IPC terminated effective May 8, 2020. In exchange for certain promises set forth in the Agreement, IPC paid Defendant $31,153.85 in separation benefits.

11.

In the Agreement, Defendant specifically acknowledged and promised:

Employee acknowledges that during Employee's employment with the Company, Employee has had access to confidential information, which includes, but is not limited to, all business, financial, contractual, graphic, statistical, technical, operational, merger, acquisition, or development and personnel information, whether written or oral, relating to the Company. Confidential information also includes, but is not limited to, information relating to the Company's assets, property, income, expenses, liabilities, clients, customers, prospective clients or customers, strategic plans, prospective business ventures, financial data, and tax data (collectively, "Confidential Information"). All Confidential Information is considered highly confidential and valuable proprietary information of the Company and possesses certain competitive value to the Company. Employee agrees that at all times after Employee's employment with the Company is terminated, Employee will (i) hold in trust, keep confidential, and not disclose to any third party or make any use of the Confidential Information of the Company; (ii) not cause the transmission, removal or transport of Confidential Information of the Company; (iii) not publish, disclose, or otherwise disseminate Confidential Information of the Company.

*See* Exhibit A, ¶ 11.

12.

Upon information and belief, Defendant began employment with Gaps Health in October 2020 as Vice President of Operations for the Southeast Region.

13.

Upon information and belief, Defendant's responsibilities for Gaps Health are substantially similar to her responsibilities with IPC.

4

14.

On or about October 23, 2020, a group of Inpatient Consultants clinicians with whom Defendant had previously worked submitted resignation notices. On information and belief, those clinicians left Inpatient Consultants to begin employment with Gaps Health.

15.

Because the clinicians were subject to restrictive covenants that limited their ability to provide competitive services at the same facilities at which they had worked on behalf of Inpatient Consultants, Inpatient Consultants wrote each clinician reminding them of their post-employment contractual obligations. Inpatient Consultants similarly wrote to Gaps Health to give notice that Inpatient Consultants intended to enforce its contractual rights.

16.

Through Gaps Health's outside legal counsel, assurances were made that the clinicians would not be employed by Gaps Health in the same facilities in which they worked on behalf of Inpatient Consultants. However, counsel for one clinician, Dr. Tamara Chittenden, contacted Inpatient Consultants' counsel in an attempt to negotiate a waiver of her restrictive covenants.

17.

Dr. Chittenden's counsel stated that the Defendant told Dr. Chittenden of prior departures of IPC's and its corporate affiliates' clinicians, of those clinicians' contractual restrictions, of IPC's and its corporate affiliates' enforcement of the restrictions, and of negotiated resolutions and the terms thereof.

18.

The information Defendant disclosed to Dr. Chittenden constitutes Confidential Information, as defined in the Agreement.

19.

Defendant disclosed the Confidential Information for the purpose of undermining IPC's and its corporate affiliates' contractual rights. In particular, Defendant's disclosures were made to induce Dr. Chittenden to resign her employment with Inpatient Consultants and to challenge the restrictions in Dr. Chittenden's employment contract.

20.

Defendant's disclosure for Gaps Health's benefit and IPC's and its corporate affiliates' harm demonstrates a likelihood that she has and will disclose other Confidential Information in breach of the Agreement.

## COUNT I - BREACH OF THE AGREEMENT

21.

IPC repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

22.

Paragraph 11 of the Agreement requires Defendant to "(i) hold in trust, keep confidential, and not disclose to any third party or make any use of the Confidential Information of the Company . . . (iii) not publish, disclose, or otherwise disseminate Confidential Information of the Company."

23.

Defendant breached the Agreement by disclosing Confidential Information to Dr. Chittenden.

24.

IPC has a valid and enforceable agreement with Defendant.

6

25.

IPC fully performed its obligations under the Agreement, including making the separation payments to Defendant.

26.

Defendant's continued breach of the Agreement will result in imminent, irreparable harm to IPC and its corporate affiliates, including but not limited to the loss of valuable client and employee relationships and goodwill and the loss of Confidential Information. For the harm discussed here, and that which is currently unknown, IPC has no adequate remedy at law for the injury for which monetary damages could effectively compensate, and whose effects may continue into the future.

27.

IPC is entitled to injunctive relief to enjoin further breaches of the Agreement. In fact, Defendant agreed that her breach of the Agreement will entitle IPC to "recover its monetary damages, including reasonable attorney's fees and costs incurred by the Company, temporary and permanent injunctive relief, and all other available remedies permitted by law." (Ex. A, ¶ 15).

## COUNT II – INJUNCTIVE RELIEF

28.

IPC repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

29.

By virtue of the allegations in this Complaint, IPC has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction

against Defendant.

30.

Unless Defendant is enjoined from engaging in any additional misconduct, IPC will be irreparably harmed by loss of goodwill as well as by present economic loss which is unascertainable at this time, and future economic loss, which is presently incalculable.

31.

IPC has no adequate remedy at law for Defendant's misconduct in breach of her Agreement.

WHEREFORE, IPC prays that the Court order and award the following:

1.     That IPC have and recover of Defendant actual and compensatory damages in excess of $25,000.00;

2.     That Defendant be enjoined and prohibited from using or disclosing Confidential Information as defined in the Agreement;

3.     That IPC receive its attorneys' fees and costs of this action from Defendant, and pre- and post-judgment interest on any award of money damages; and

4.     Such other and further relief as the Court deems necessary.

Dated this 6th day of January, 2021.

Benjamin P. Fryer
NC Bar No. 39254
bfryer@fordharrison.com
FordHarrison LLP
6000 Fairview Road
Suite 1415
Charlotte, NC 28210
Telephone: 980-282-1900
Facsimile: 980-282-1949

*Attorneys for Plaintiffs*

8

STATE OF NORTH CAROLINA

COUNTY OF BUNCOMBE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

CASE NO.

IPC THE HOSPITALIST MANAGEMENT
COMPANY, LLC,

                    Plaintiff,

v.

KIMBERLY BERCHEN,

                    Defendant.

## **VERIFICATION**

Personally appeared before the undersigned officer, Clarence A. Smith, who, after being duly sworn, states that he is over the age of eighteen years, is otherwise competent to testify, has personal knowledge of the facts contained in the Verified Complaint filed in connection with the above-styled matter, and that the same are true and correct.

FURTHER AFFIANT SAYETH NOT.

_Clarence A. Smith_ (signature)

Clarence A. Smith

Sworn to before me and
subscribed in my presence
this 5 day of January, 2021.

_Kate Ennis_ (signature)
Notary Public

My commission expires:

18OCT21

KATE ENNIS
NOTARY PUBLIC
TALBOT COUNTY, MD

# CONFIDENTIAL SEPARATION AGREEMENT AND RELEASE

This Confidential Separation Agreement and Release (the "Release Agreement") is made and entered into by and between **IPC The Hospitalist Management Company, LLC** (the "Company") and **Kimberly Berchen** ("Employee"). Employee's last day of employment with the Company will be May 8, 2020 (the "Separation Date"). In consideration of the mutual covenants and obligations set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    <u>Consideration for Release</u>. In exchange for the release of claims and other promises and covenants by Employee detailed in this Release Agreement, as well as non-revocation of this Release Agreement and compliance with its terms, the Company agrees: (a) to pay Employee the total gross amount of $31,153.85, minus applicable deductions required by law (the "Separation Pay"), to be paid in equal installments in accordance with the Company's normal payroll cycle beginning on the Company's first regularly scheduled pay day that occurs at least eight (8) business days after the Separation Date and after the Company receives a copy of this Release Agreement signed by Employee and any documents, records, or other property of any nature referenced in Paragraph 4 below and continuing for twelve weeks thereafter. Employee acknowledges and agrees that the Consideration described in this paragraph is a special benefit provided to Employee in return for Employee's execution of this Release Agreement and is more than Employee would normally receive upon separation from employment.

2.    <u>Release</u>. In return for the payment of the Consideration described in Paragraph 1 above, Employee releases and covenants not to sue (or to request arbitration or initiate any other legal proceeding in any court or before any tribunal or administrative entity) Company and all current, future and former parents, subsidiaries, related companies, partnerships, or joint ventures related thereto, (specifically including but not limited to Team Health, LLC and all of its parents, subsidiaries, divisions, branches, related companies and joint ventures) and, with respect to each of them, their predecessors and successors; and, with respect to each such entity, all of its past, present, and future employees, officers, directors, stockholders, owners, representatives, assigns, attorneys, agents, insurers and any other persons acting by, through, under or in concert with any of the persons or entities listed in this subsection, and their successors (collectively, "the Released Parties"), from and for any and all claims, demands, actions, causes of action, liability, losses, damages, costs (including attorney's fees), expenses, and obligations of any kind in Employee's favor (whether known or unknown) that arise out of Employee's employment with, or the termination of Employee's employment with, the Company, except for claims arising under this Release Agreement. This includes, but is not limited to, claims for breach of contract, wrongful termination, or past wages, bonuses, or other compensation under applicable state law; claims to injunctive or other equitable relief of any kind; claims based upon the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); claims under or based upon the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"); claims under or based upon Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Americans With Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), the Older Workers Benefit Protection Act ("OWBPA"), the Fair Labor Standards Act ("FLSA"), the Family and

1

Employee's initials: _KB_

EXHIBIT A

Medical Leave Act ("FMLA"), the Fair Credit Reporting Act ("FCRA"), the Worker Adjustment and Retraining Notification Act ("WARN Act"), or any and all other federal, state, or local laws prohibiting discrimination or harassment in the workplace; claims under or based upon any state and federal whistleblower laws; any qui tam actions or claims under the federal False Claims Act and/or any state false claims act; and/or claims under or based upon any other federal, state, or local laws or common law. Employee also acknowledges and agrees that Employee is releasing and giving up any claims Employee has or may have had against the Released Parties for other tortious or unlawful conduct. This release will become effective as of the Effective Date defined in Paragraph 6, and it will survive all other aspects of this Release Agreement. This release does not purport to release any claims that are prohibited from being released or waived under applicable law. Employee agrees that this release will cover all claims of every nature and kind whatsoever that Employee may have, known or unknown, suspected or unsuspected, past or present, which Employee may have against the Company.

3.      General Acknowledgments and Representations by Employee.

        a.      Employee represents and agrees that Employee has not filed any Charges of Discrimination or complaints against the Company with the Equal Employment Opportunity Commission ("EEOC"), the U.S. Department of Labor, or with any state or local agency.

        b.      Employee further acknowledges and agrees that, with payment of the Separation Pay described in Paragraph 1 above, Employee: (i) has received all pay to which Employee was entitled during Employee's employment with the Company; (ii) is not owed unpaid wages or unpaid overtime compensation by the Company; and (iii) does not believe that Employee's rights under any state or federal wage and hour laws, including the federal Fair Labor Standards Act ("FLSA"), were violated by any of the Released Parties during Employee's employment with the Company.

        c.      Employee further acknowledges and warrants that Employee is not aware of, or that Employee has fully disclosed to the Company in writing, any matters for which Employee was responsible or which came to Employee's attention as an employee of the Company that might give rise to, evidence, or support any claim of illegal or improper conduct, regulatory violation, unlawful discrimination, retaliation, or other cause of action against the Company, including any information Employee has concerning any conduct involving the Company that Employee has any reason to believe may be unlawful, unethical or otherwise inappropriate, including conduct in violation of the Securities Act of 1933, the Securities Exchange Act of 1934, the Sarbanes-Oxley Act of 2002, the Dodd-Frank Wall Street Reform and Consumer Protection Act, the Foreign Corrupt Practices Act, or the federal False Claims Act or any state false claims act. Other than as so disclosed, Employee acknowledges and warrants that Employee is not aware of any matters for which Employee was responsible or which came to Employee's attention as an employee of the Company that might give rise to, evidence, or support any claim of illegal or improper conduct, regulatory violation, unlawful discrimination, retaliation, or other cause of action against the Company, including any matter relating to possible qui tam actions or any matter in violation of the federal False Claims Act or any state false claims act. Employee certifies that to the best of

2

Employee's knowledge, information and belief, no member of management or any other employee (including Employee) who has a significant role in Company's internal control over financial reporting has committed any fraud or engaged in any act, practice, or course of conduct that operates or would operate as a fraud or deceit upon any person or entity. Employee understands and agrees that these representations are a material inducement for the Company to enter into this Release Agreement. Employee further understands and agrees that if the representations are misleading, fraudulent, inaccurate, or incorrect, in whole or in part, that would be a breach of this Release Agreement by Employee. For avoidance of doubt, Employee's disclosures under this paragraph shall not limit Employee's ability to communicate with any government agency or otherwise participate in an investigation or other proceeding that may be conducted by a government agency without prior notice to the Company.

4.      Return of Company Property. Employee also agrees that Employee will deliver to the Company all documents, records, or other property of any nature belonging to the Company in Employee's custody or control.

5.      No Assignment of Claims by Employee. Employee also agrees that Employee has not assigned to anyone any of the claims released in this Release Agreement.

6.      Revocation Period. Employee understands that Employee shall have seven (7) days following Employee's execution of this Release Agreement to revoke this Release Agreement, and this Release Agreement shall not become effective until seven (7) days after Employee signs it (the "Effective Date"). If Employee wishes to revoke this Release Agreement, Employee must notify Suzette Nussbaum, who is a Human Resources Director for the Company, in writing within seven (7) days following Employee's execution of this Release Agreement at Suzette_Nussbaum@teamhealth.com. Employee understands that this Release Agreement is a legally binding release, and that unless Employee revokes it in writing within (7) days after Employee signs it, Employee will thereafter be barred from seeking or obtaining, directly or indirectly, any relief or recovery of any kind for or based on any of the claims released and forever discharged in this Release Agreement. **Employee also understands and agrees that Employee may not sign or return this Release Agreement to the Company prior to the Separation Date.**

7.      Employee's Acknowledgement of Right to Consult with an Attorney. By signing this Release Agreement, Employee acknowledges that the Company has advised Employee to discuss this Release Agreement with an attorney before signing it. Employee acknowledges and agrees that the Released Parties are not responsible for any of the costs, expenses, and attorney's fees, if any, incurred by Employee in connection with any claim or the review and signing of this Release Agreement.

8.      Period for Employee to Consider Agreement. Employee acknowledges and states that Employee has been given a period of up to twenty-one (21) days in which to consider the terms of this Release Agreement

9.      Additional Acknowledgements by Employee. Employee agrees that Employee

3

Employee's initials: ____

EXHIBIT A

understands this Release Agreement, that Employee signs it voluntarily of Employee's own free will, and that Employee is not suffering from any disability or condition that would render Employee unable to enter into this Release Agreement.

10.  <u>Confidentiality of this Agreement</u>. This Release Agreement and its terms shall be kept confidential by the parties and shall not be disclosed at any time to any other person without the prior written consent of the opposite party, except disclosures required for tax reporting purposes, disclosures made in the course of obtaining legal, tax, or accounting advice, or disclosures pursuant to subpoena or court order.

11.  <u>Non-Disclosure of Confidential Information</u>.  Employee acknowledges that during Employee's employment with the Company, Employee has had access to confidential information, which includes, but is not limited to, all business, financial, contractual, graphic, statistical, technical, operational, merger, acquisition, or development and personnel information, whether written or oral, relating to the Company.  Confidential information also includes, but is not limited to, information relating to the Company's assets, property, income, expenses, liabilities, clients, customers, prospective clients or customers, strategic plans, prospective business ventures, financial data, and tax data (collectively, "Confidential Information"). All Confidential Information is considered highly confidential and valuable proprietary information of the Company and possesses certain competitive value to the Company. Employee agrees that at all times after Employee's employment with the Company is terminated, Employee will (i) hold in trust, keep confidential, and not disclose to any third party or make any use of the Confidential Information of the Company; (ii) not cause the transmission, removal or transport of Confidential Information of the Company; (iii) not publish, disclose, or otherwise disseminate Confidential Information of the Company.

*Notice of Immunity from Liability* - An individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (i) files any document containing the trade secret under seal; and (ii) does not disclose the trade secret, except pursuant to court order.

12.  <u>Non-Disparagement</u>. Employee agrees that Employee will not make any statements, written or verbal, that are derogatory, disparaging, harmful, or otherwise adverse to the Company or the Released Parties. Employee acknowledges, understands, and agrees that the non-disparagement obligations in this paragraph prohibit Employee from making any derogatory or disparaging statements, references, or comments about the Company to anyone, whether directly or indirectly, by inference or innuendo, and whether made in person, in writing, by electronic communication (including by personal email or otherwise), in a blog, on a website, or by any form of social media (such as Twitter, LinkedIn, Facebook, etc.). Notwithstanding the foregoing, nothing in this paragraph shall limit or interfere with

4

Employee's initials: _KB_

Employee's ability to communicate with any government agency or to participate in any investigation or proceeding conducted by any government agency.

13.     <u>Cooperation by Employee</u>. Employee promises to fully cooperate with the Company or any affiliate of the Company in effecting a smooth transition of Employee's responsibilities to others, including being available by phone or email following the Separation Date if needed to answer periodic job-related questions. Employee understands and agrees that it is an essential term of this Release Agreement that Employee cooperate with the Company and its legal counsel at all times with regard to any internal or external claims, charges, audits, investigations, and/or lawsuits involving the Company concerning which Employee may have knowledge or be a witness. Such cooperation includes meeting with Company representatives and counsel to disclose such facts as Employee may know; preparing with Company counsel for any deposition, trial, hearing, or other proceeding; attending any deposition, trial, hearing or other proceeding to provide truthful testimony; and providing other assistance to the Company and its counsel in the defense or prosecution of litigation as may, in the sole judgment of the Company's counsel, be necessary. The Company agrees to reimburse Employee for reasonable and necessary out-of-pocket expenses incurred by Employee in the course of complying with this obligation that are pre-authorized by Company. Nothing in this paragraph should be construed in any way as prohibiting or discouraging Employee from testifying truthfully under oath as part of, or in connection with, any such proceeding.

14.     <u>No Admission of Liability</u>. This Release Agreement does not constitute an admission of liability or wrongdoing by either party.

15.     <u>Remedies for Breach by Employee</u>. In the event Employee violates any term of this Release Agreement, Employer's obligation to pay the Separation Pay shall cease, Employee will not be entitled to any remaining Separation Pay, and the Company will be entitled to recover its monetary damages, including reasonable attorney's fees and costs incurred by the Company, temporary and permanent injunctive relief, and all other available remedies permitted by law.

16.     <u>Definition of "the Parties."</u> Whenever the phrase "the parties" is used in this Release Agreement, it shall be deemed to include "Employee" and "the Company" as defined herein.

17.     <u>Binding Effect on Successors and Assigns</u>. This Release Agreement inures to the benefit of and shall be binding upon the parties and their respective successors and assigns.

18.     <u>Severability</u>. In the event that any provision of this Release Agreement is held to be unenforceable for any reason by a court of competent jurisdiction, the validity of the remaining provisions of this Release Agreement shall not be affected thereby, and the invalid or unenforceable provision shall be deemed not to be a part of this Release Agreement.

5

Employee's initials: _KB_

EXHIBIT A

19.    <u>Governing Law and Forum Selection</u>. This Release Agreement and any disputes relating to it shall be governed and construed in accordance with the laws of the State of Tennessee. The parties agree that any conflict of law rule that might require reference to the laws of any jurisdiction other than Tennessee shall be disregarded. Each party agrees that the courts sitting in Knox County, Tennessee shall have sole and exclusive jurisdiction and venue over any matter arising out of or relating to this Release Agreement, or from the relationship of the parties, or from Employee's employment with the Company, or from the termination of Employee's employment with the Company, whether arising from contract, tort, statute, or otherwise, and each party hereby submits itself to the venue and jurisdiction of such courts.

20.    <u>Entire Agreement</u>. The provisions included in this Release Agreement constitute the entire agreement existing between Employee and the Company, and this Release Agreement supersedes all prior agreements between Employee and the Company, its predecessors, or any of the Released Parties, and no other agreement shall have any force or effect unless it is reduced to writing and signed by both parties.

21.    <u>Counterparts</u>. This Release Agreement may be signed in two identical counterparts, each of which shall be deemed an original, and which together shall constitute one instrument.

By signing below, the parties agree to be bound by the promises and covenants herein.

**IPC The Hospitalist Management Company, LLC**

By: _____

Its: _____

I accept the terms of the Release Agreement set forth above.

_____
**Kimberly Berchen**

**Date:** 5/10/20 _____

6

Employee's initials: _KB_

19. <u>Governing Law and Forum Selection</u>. This Release Agreement and any disputes relating to it shall be governed and construed in accordance with the laws of the State of Tennessee. The parties agree that any conflict of law rule that might require reference to the laws of any jurisdiction other than Tennessee shall be disregarded. Each party agrees that the courts sitting in Knox County, Tennessee shall have sole and exclusive jurisdiction and venue over any matter arising out of or relating to this Release Agreement, or from the relationship of the parties, or from Employee's employment with the Company, or from the termination of Employee's employment with the Company, whether arising from contract, tort, statute, or otherwise, and each party hereby submits itself to the venue and jurisdiction of such courts.

20. <u>Entire Agreement</u>. The provisions included in this Release Agreement constitute the entire agreement existing between Employee and the Company, and this Release Agreement supersedes all prior agreements between Employee and the Company, its predecessors, or any of the Released Parties, and no other agreement shall have any force or effect unless it is reduced to writing and signed by both parties.

21. <u>Counterparts</u>. This Release Agreement may be signed in two identical counterparts, each of which shall be deemed an original, and which together shall constitute one instrument.

By signing below, the parties agree to be bound by the promises and covenants herein.

**IPC The Hospitalist Management Company, LLC**

By: _~Nusbum_

Its: _Suzette Nussbaum_

I accept the terms of the Release Agreement set forth above.

_[signature]_

**Kimberly Berchen**

Date: _5/16/20_

6

Employee's initials: _KB_

EXHIBIT A

# STATE OF NORTH CAROLINA

_____BUNCOMBE_____ County

File No. **21CV 00098**

In The General Court Of Justice
☐ District ☒ Superior Court Division

**Name Of Plaintiff**
IPC THE HOSPITALIST MANAGEMENT COMPANY, LLC

**Address**

**City, State, Zip**

### VERSUS

**CIVIL SUMMONS**
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

**Name Of Defendant(s)**
KIMBERLY BERCHEN

**Date Original Summons Issued**

**Date(s) Subsequent Summons(es) Issued**

## To Each Of The Defendant(s) Named Below:

**Name And Address Of Defendant 1**
KIMBERLY BERCHEN
468 Cedar Lane

Arden                    NC      28704

**Name And Address Of Defendant 2**

⚠️ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles! Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

**Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)**
Benjamin P. Fryer
FordHarrison LLP
6000 Fairview Road, Suite 1415
Charlotte                NC      28210

**Date Issued** 1-7-2021    **Time** 12:21    ☐ AM ☐ PM

**Signature**

☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court

☐ ENDORSEMENT (ASSESS FEE)
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

**Date Of Endorsement**   **Time**   ☐ AM ☐ PM

**Signature**

☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

| RETURN OF SERVICE |
|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

| DEFENDANT 1 |
|---|

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| DEFENDANT 2 |
|---|

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

STATE OF NORTH CAROLINA

COUNTY OF BUNCOMBE

IPC THE HOSPITALIST
MANAGEMENT COMPANY, LLC,

Plaintiff,

vs.

KIMBERLY BERCHEN,

Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CV-00098

**MOTION FOR EXTENSION OF TIME TO
ANSWER COMPLAINT**

NOW COMES Defendant Kimberly Berchen ("Defendant"), pursuant to Rule 6 of the

North Carolina Rules of Civil Procedure, and hereby moves the Court for an Order enlarging the

time to respond to IPC The Hospitalist Management Company, LLC's ("IPC") complaint against

Defendant on the grounds that Defendant needs additional time to answer or otherwise plead.

Defendant received a copy of the complaint via courier delivery on January 14, 2021. The time

within which Defendant has to answer or otherwise plead has not expired.

WHEREFORE, Defendant prays the Court for an extension of time within which to answer

or otherwise plead to IPC's complaint, up to and including March 15, 2021.

Respectfully submitted, this is the 5th day of February, 2021.

**STRIANESE HUCKERT, LLP**

Tamara L. Huckert, N.C. Bar No. 35348
Christopher Strianese, N.C. Bar. No. 46918
3501 Monroe Rd.
Charlotte, NC 28205
tamara@strilaw.com
chris@strilaw.com
Telephone: 704-966-2101
*Attorneys for Kimberly Berchen*

## CERTIFICATE OF SERVICE

I certify that I have served the foregoing **MOTION FOR EXTENSION OF TIME** on the other parties to this action by placing a copy thereof enclosed in a postage prepaid properly addressed wrapper in a post office or official depository under the exclusive care and custody of the United States Postal Service, addressed to:

> Benjamin P. Fryer
> FordHarrison LLP
> 6000 Fairview Rd.
> Ste. 1415
> Charlotte, NC 28210
> *Attorneys for Plaintiff*

This is the 5TH day of February, 2021.

Tamara Huckert
Strianese Huckert LLP
3501 Monroe Rd.
Charlotte, NC 28205
tamara@strilaw.com
Telephone: 704-966-2101
*Attorneys for Kimberly Berchen*

STATE OF NORTH CAROLINA

COUNTY OF BUNCOMB

IPC THE HOSPITALIST
MANAGEMENT COMPANY, LLC,

Plaintiff,

vs.

KIMBERLY BERCHEN,

Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CV-00098

FILED

2021 FEB -9 A 10: 43

BUNCOMBE CO., C.S.C.

BY _____

**ORDER**

**FOR GOOD CAUSE SHOWN,** the time of Defendant for answering or otherwise pleading

to Plaintiff's complaint is hereby extended through March 15, 2021.

This the _9_ day of _February_ 2021.

_____
CLERK OF SUPERIOR COURT

STATE OF NORTH CAROLINA

COUNTY OF BUNCOMBE

IPC THE HOSPITALIST
MANAGEMENT COMPANY, LLC,

        Plaintiff,

        vs.

KIMBERLY BERCHEN,

        Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CV-00098

**FILED**
**2021 MAR -4 A 9: 57**
BUNCOMBE COUNTY, C.S.C.
BY _____

**MOTION FOR EXTENSION OF
TIME TO RESPOND TO
PLAINTIFF'S FIRST SET OF
INTERROGATORIES AND
PLAINTIFF'S FIRST REQUESTS
FOR PRODUCTION OF
DOCUMENTS**

NOW COMES Defendant Kimberly Berchen ("Defendant"), pursuant to Rule 6 of the North Carolina Rules of Civil Procedure, and hereby moves the Court for an Order enlarging the time to respond to Plaintiff's First Set of Interrogatories and Plaintiff's First Requests for Production of Documents ("Plaintiff's Discovery Requests") on the grounds that Defendant needs additional time to respond. Defendant was served with Plaintiff's Discovery Requests via U.S. Mail and email on February 18, 2021. The time within which Defendant has to respond has not expired.

WHEREFORE, Defendant prays the Court for an extension of time within which to respond to Plaintiff's Discovery Requests, up to and including April 22, 2021.

Respectfully submitted, this is the 2nd day of March, 2021.

STRIANESE HUCKERT LLP

Tamara L. Huckert, N.C. Bar No. 35348
Christopher Strianese, N.C. Bar. No. 46918
3501 Monroe Rd.
Charlotte, NC 28205
tamara@strilaw.com
chris@strilaw.com
Telephone: 704-966-2101

*Attorneys for Kimberly Berchen*

### **CERTIFICATE OF SERVICE**

       I certify that I have served the foregoing **MOTION FOR EXTENSION OF TIME** on the other parties to this action by placing a copy thereof enclosed in a postage prepaid properly addressed wrapper in a post office or official depository under the exclusive care and custody of the United States Postal Service, addressed to:

                            Benjamin P. Fryer
                            FordHarrison LLP
                            6000 Fairview Rd.
                            Ste. 1415
                            Charlotte, NC 28210
                            *Attorneys for Plaintiff*

This is the 2nd day of March, 2021.

                            Tamara Huckert

                            Tamara Huckert
                            Strianese Huckert LLP
                            3501 Monroe Rd.
                            Charlotte, NC 28205
                            tamara@strilaw.com
                            Telephone: 704-966-2101
                            *Attorneys for Kimberly Berchen*

STATE OF NORTH CAROLINA

COUNTY OF BUNCOMB

IPC THE HOSPITALIST
MANAGEMENT COMPANY, LLC,

Plaintiff,

vs.

KIMBERLY BERCHEN,

Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CV-00098

FILED

2021 MAR -4  A 10: 06

BUNCOMBE CO.. C.S.C.

BY _____

**ORDER**

**FOR GOOD CAUSE SHOWN**, the time of Defendant to respond to Plaintiff's First Set of

Interrogatories and Plaintiff's First Requests for Production of Documents is hereby extended through

April 22, 2021.

This the _4_ day of _MARCH_ 2021.

_____
CLERK OF SUPERIOR COURT

STATE OF NORTH CAROLINA

COUNTY OF BUNCOMBE

IN THE GENERAL COURT OF
JUSTICE
SUPERIOR COURT DIVISION

CASE NO. 21-CVS-00098

FILED

2021 MAR 10 P 1:55

BUNCOMBE COUNTY, C.S.C.

BY _____

IPC THE HOSPITALIST MANAGEMENT
COMPANY, LLC,

Plaintiff,

v.

KIMBERLY BERCHEN,

Defendant.

OBJECTIONS TO SUBPOENA AND
MOTION TO QUASH AND FOR
PROTECTIVE ORDER

NOW COME Benjamin P. Fryer, a non-party, and Plaintiff IPC The Hospitalist Management Company, LLC ("IPC") pursuant to North Carolina Rule of Civil Procedure 45 and object to the subpoena served on Fryer in the above-captioned matter. A true and correct copy of the subpoena is attached hereto as Exhibit A.

IPC and Fryer show the following grounds for objecting to the subpoena:

The subpoena and proposed deposition seek disclosure of privileged or otherwise protected matters and no exception or waiver applies. Fryer is the attorney of record for IPC in this matter. Berchen's counsel has stated their intention to require Fryer to testify regarding a telephone call between Fryer and counsel for Dr. Tamara Chittenden, a former IPC employee, in which Chittenden's counsel indicated that Chittenden learned of certain information IPC considers confidential from Berchen. By subpoenaing Fryer's testimony, it is clear that Berchen's counsel intends to inquire as to Fryer's communications with IPC regarding his call with Chittenden's counsel. Such communications are protected by the attorney-client privilege. Accordingly, Fryer and IPC hereby request the Court to quash the subpoena pursuant to Rule 45(c)(3)(b).

The subpoena and proposed deposition subjects Fryer to an undue burden. The subpoena and proposed deposition of Fryer will result in an undue burden on Fryer. Berchen's counsel has stated their intent to disqualify Fryer as IPC's counsel in this matter based his call with Chittenden's counsel. However, Fryer cannot be disqualified in this matter under North Carolina Rule of Professional Conduct 3.7 and interpretive case law because Fryer is not a necessary witness. An attorney can only be a necessary witness if he has relevant evidence that cannot be obtained from another source. Fryer's testimony cannot be relevant because it is inadmissible as hearsay within hearsay. Moreover, Fryer is not the

only source of testimony regarding the call because Chittenden's attorney also has knowledge of the call, though that testimony would likewise be irrelevant because it is inadmissible hearsay. Thus, the only purpose of the subpoena and deposition is to harass Fryer and IPC. Accordingly, Fryer and IPC hereby request the Court to quash the subpoena Rule 45(c)(3)(c).

<u>The subpoena and proposed deposition are unreasonable or oppressive</u>. Because the only testimony Fryer could offer would be inadmissible hearsay within hearsay or the content of privileged communications, it is clear the subpoena's sole purpose is to harass Fryer and IPC. Accordingly, Fryer and IPC hereby request the Court to quash the subpoena Rule 45(c)(3)(d).

Fryer and IPC, having shown grounds sufficient to object to the subpoena pursuant to Rule 45(c)(3)(b), (c), and (d), now move the Court to quash the subpoena as stated above.

WHEREFORE, Fryer and IPC respectfully request that the Court quash the subpoena in its entirety and, pursuant to North Carolina Rule of Civil Procedure 26(c), issue a protective order that the discovery not be had.

Respectfully submitted this 9th day of March, 2021.

Benjamin P. Fryer
NC Bar No. 39254
bfryer@fordharrison.com
FORD & HARRISON LLP
6000 Fairview Road, Suite 1415
Charlotte, NC 28210
Telephone: 980-282-1900
Facsimile: 980-556-7183

Attorneys for IPC The Hospitalist Management Company, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2021, a copy of the foregoing **Objections to Subpoena and Motion to Quash and for Protective Order** was served via U.S. Mail and email on the following:

> Tamara Huckert
> Strianese Huckert LLP
> 3501 Monroe Road
> Charlotte, NC 28205
> Tamara@strilaw.co

Benjamin P. Fryer

# STATE OF NORTH CAROLINA

File No.
21-CV-00098

**BUNCOME** County

In The General Court Of Justice
☐ District ☒ Superior Court Division

IPC THE HOSPITALIST MANAGEMENT COMPANY LLC,

Additional File Numbers

**VERSUS**

KIMBERLY BERCHEN

# SUBPOENA

G.S. 1A-1, Rule 45; 8-59, -61, -63; 15A-801, -802

Party Requesting Subpoena
☐ State/Plaintiff  ☒ Defendant

NOTE TO PARTIES NOT REPRESENTED BY COUNSEL: *Subpoenas may be produced at your request, but must be signed and issued by the office of the Clerk of Superior Court, or by a magistrate or judge.*

TO | Name And Address Of Person Subpoenaed
Ben Fryer, Esq.
Ford Harrison LLP
6000 Fairview Road, Suite 1415
Charlotte, NC 28210

Alternate Address

Telephone No.
980-282-1900

Telephone No.

**YOU ARE COMMANDED TO:** *(check all that apply)*

☐ appear and testify, in the above entitled action, before the court at the place, date and time indicated below.
☒ appear and testify, in the above entitled action, at a deposition at the place, date and time indicated below.
☒ produce and permit inspection and copying of the following items, at the place, date and time indicated below.
  ☐ See attached list. *(List here if space sufficient)*
  All documents and communications between you and Margaret Maloney, Esq. that concern or relate to Plaintiff, Defendant, Dr. Tamara Chittenden, or the above-referenced matter, including without limitation those that concern or relate to paragraph 16, 17, and 18 of the Complaint filed in the above-referenced action.

Name And Location Of Court/Place Of Deposition/Place To Produce
Strianese Huckert LLP
3501 Monroe Road
Cornelius, NC 28205

Date To Appear/Produce, Until Released
March 25, 2021

Time To Appear/Produce, Until Released
10:00   ☒ AM  ☐ PM

Name And Address Of Applicant Or Applicant's Attorney
Christopher Strianese, Esq.
Strianese Hucket LLP
3501 Monroe Road
Charlotte, NC 28202

Date
03/01/2021

Signature

☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court
☐ Magistrate   ☒ Attorney/DA     ☐ District Court Judge
                                  ☐ Superior Court Judge

Telephone No. Of Applicant Or Applicant's Attorney
704-966-2101

## RETURN OF SERVICE

I certify this subpoena was received and served on the person subpoenaed as follows:
By ☐ personal delivery.
   ☐ registered or certified mail, receipt requested and attached.
   ☐ telephone communication by Sheriff *(use only for a witness subpoenaed to appear and testify).*
   ☐ telephone communication by local law enforcement agency *(use only for a witness subpoenaed to appear and testify in a criminal case).*
   **NOTE TO COURT:** *If the witness was served by telephone communication from a local law enforcement agency in a criminal case, the court may **not** issue a show cause order or order for arrest against the witness until the witness has been served personally with the written subpoena.*
   ☐ I was unable to serve this subpoena. Reason unable to serve: _____

Service Fee
$ ☐ Paid ☐ Due | Date Served | Name Of Authorized Server (type or print) | Signature Of Authorized Server | Title/Agency

NOTE TO PERSON REQUESTING SUBPOENA: *A copy of this subpoena must be delivered, mailed or faxed to the attorney for each party in this case. If a party is not represented by an attorney, the copy must be mailed or delivered to the party. This does not apply in criminal cases.*

AOC-G-100, Rev. 2/18
© 2018 Administrative Office of the Courts

*(Please see reverse side)*

**NOTE: Rule 45, North Carolina Rules of Civil Procedure, Subsections (c) and (d).**

**(c) Protection of Persons Subject to Subpoena**

(1) Avoid undue burden or expense. - A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena. The court shall enforce this subdivision and impose upon the party or attorney in violation of this requirement an appropriate sanction that may include compensating the person unduly burdened for lost earnings and for reasonable attorney's fees.

(2) For production of public records or hospital medical records. - Where the subpoena commands any custodian of public records or any custodian of hospital medical records, as defined in G.S. 8-44.1, to appear for the sole purpose of producing certain records in the custodian's custody, the custodian subpoenaed may, in lieu of personal appearance, tender to the court in which the action is pending by registered or certified mail or by personal delivery, on or before the time specified in the subpoena, certified copies of the records requested together with a copy of the subpoena and an affidavit by the custodian testifying that the copies are true and correct copies and that the records were made and kept in the regular course of business, or if no such records are in the custodian's custody, an affidavit to that effect. When the copies of records are personally delivered under this subdivision, a receipt shall be obtained from the person receiving the records. Any original or certified copy of records or an affidavit delivered according to the provisions of this subdivision, unless otherwise objectionable, shall be admissible in any action or proceeding without further certification or authentication. Copies of hospital medical records tendered under this subdivision shall not be open to inspection or copied by any person, except to the parties to the case or proceedings and their attorneys in depositions, until ordered published by the judge at the time of the hearing or trial. Nothing contained herein shall be construed to waive the physician-patient privilege or to require any privileged communication under law to be disclosed.

(3) Written objection to subpoenas. - Subject to subsection (d) of this rule, a person commanded to appear at a deposition or to produce and permit the inspection and copying of records, books, papers, documents, electronically stored information, or tangible things may, within 10 days after service of the subpoena or before the time specified for compliance if the time is less than 10 days after service, serve upon the party or the attorney designated in the subpoena written objection to the subpoena, setting forth the specific grounds for the objection. The written objection shall comply with the requirements of Rule 11. Each of the following grounds may be sufficient for objecting to a subpoena:

    a. The subpoena fails to allow reasonable time for compliance.
    b. The subpoena requires disclosure of privileged or other protected matter and no exception or waiver applies to the privilege or protection.
    c. The subpoena subjects a person to an undue burden or expense.
    d. The subpoena is otherwise unreasonable or oppressive.
    e. The subpoena is procedurally defective.

(4) Order of court required to override objection. - If objection is made under subdivision (3) of this subsection, the party serving the subpoena shall not be entitled to compel the subpoenaed person's appearance at a deposition or to inspect and copy materials to which an objection has been made except pursuant to an order of the court. If objection is made, the party serving the subpoena may, upon notice to the subpoenaed person, move at any time for an order to compel the subpoenaed person's appearance at the deposition or the production of the materials designated in the subpoena. The motion shall be filed in the court in the county in which the deposition or production of materials is to occur.

(5) Motion to quash or modify subpoena. - A person commanded to appear at a trial, hearing, deposition, or to produce and permit the inspection and copying of records, books, papers, documents, electronically stored information, or other tangible things, within 10 days after service of the subpoena or before the time specified for compliance if the time is less than 10 days after service, may file a motion to quash or modify the subpoena. The court shall quash or modify the subpoena if the subpoenaed person demonstrates the existence of any of the reasons set forth in subdivision (3) of this subsection. The motion shall be filed in the court in the county in which the trial, hearing, deposition, or production of materials is to occur.

(6) Order to compel: expenses to comply with subpoena. - When a court enters an order compelling a deposition or the production of records, books, papers, documents, electronically stored information, or other tangible things, the order shall protect any person who is not a party or an agent of a party from significant expense resulting from complying with the subpoena. The court may order that the person to whom the subpoena is addressed will be reasonably compensated for the cost of producing the records, books, papers, documents, electronically stored information, or tangible things specified in the subpoena.

(7) Trade secrets; confidential information. - When a subpoena requires disclosure of a trade secret or other confidential research, development, or commercial information, a court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or when the party on whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot otherwise be met without undue hardship, the court may order a person to make an appearance or produce the materials only on specified conditions stated in the order.

(8) Order to quash: expenses. - When a court enters an order quashing or modifying the subpoena, the court may order the party on whose behalf the subpoena is issued to pay all or part of the subpoenaed person's reasonable expenses including attorney's fees.

**(d) Duties in Responding to Subpoena**

(1) Form of response. - A person responding to a subpoena to produce records, books, documents, electronically stored information, or tangible things shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.

(2) Form of producing electronically stored information not specified. - If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it ordinarily is maintained or in a reasonably useable form or forms.

(3) Electronically stored information in only one form. - The person responding need not produce the same electronically stored information in more than one form.

(4) Inaccessible electronically stored information. - The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, after considering the limitations of Rule 26(b)(1a).The court may specify conditions for discovery, including requiring the party that seeks discovery from a nonparty to bear the costs of locating, preserving, collecting, and producing the electronically stored information involved.

(5) Specificity of objection. - When information subject to a subpoena is withheld on the objection that it is subject to protection as trial preparation materials, or that it is otherwise privileged, the objection shall be made with specificity and shall be supported by a description of the nature of the communications, records, books, papers, documents, electronically stored information, or other tangible things not produced, sufficient for the requesting party to contest the objection.

---

## INFORMATION FOR WITNESS

**NOTE:** *If you have any questions about being subpoenaed as a witness, you should contact the person named on Page One of this Subpoena in the box labeled "Name And Address Of Applicant Or Applicant's Attorney."*

**DUTIES OF A WITNESS**

- Unless otherwise directed by the presiding judge, you must answer all questions asked when you are on the stand giving testimony.

- In answering questions, speak clearly and loudly enough to be heard.

- Your answers to questions must be truthful.

- If you are commanded to produce any items, you must bring them with you to court or to the deposition.

- You must continue to attend court until released by the court. You must continue to attend a deposition until the deposition is completed.

**BRIBING OR THREATENING A WITNESS**

It is a violation of State law for anyone to attempt to bribe, threaten, harass, or intimidate a witness. If anyone attempts to do any of these things concerning your involvement as a witness in a case, you should promptly report that to the district attorney or the presiding judge.

**WITNESS FEE**

A witness under subpoena and that appears in court to testify, is entitled to a small daily fee, and to travel expense reimbursement, if it is necessary to travel outside the county in order to testify. (The fee for an "expert witness" will be set by the presiding judge.) After you have been discharged as a witness, if you desire to collect the statutory fee, you should immediately contact the Clerk's office and certify your attendance as a witness so that you will be paid any amount due you.

AOC-G-100, Side Two, Rev. 2/18
© 2018 Administrative Office of the Courts

STATE OF NORTH CAROLINA

COUNTY OF BUNCOMBE

| | |
|---|---|
| IPC THE HOSPITALIST MANAGEMENT COMPANY, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| KIMBERLY BERCHEN, | ) ) ) |
| Defendant. | ) ) |
| AND | ) ) |
| KIMBERLY BERCHEN, | ) ) ) |
| Third-Party Plaintiff, | ) ) |
| vs. | ) ) |
| TEAM HEALTH, LLC d/b/a TEAMHEALTH, | ) ) ) |
| Third-Party Defendant. | ) |

**ANSWER AND COUNTERCLAIMS AGAINST IPC THE HOSPITALIST MANAGEMENT COMPANY, LLC and THIRD-PARTY COMPLAINT AGAINST TEAM HEALTH LLC**

Defendant, Kimberly Berchen ("Defendant" or "Berchen"), by and through her undersigned counsel, Strianese Huckert LLP, hereby files this Answer and Counterclaims against Plaintiff, IPC The Hospitalist Management Company, LLC ("Plaintiff or "IPC") and Third-Party Complaint against Team Health, LLC d/b/a TeamHealth ("TeamHealth"). As to IPC's allegations, Berchen responds as follows:

1. Berchen admits that she is a former IPC employee and is currently employed with Gaps Health, Inc. ("Gaps Health"). Berchen avers that IPC's Verified Complaint is a document in writing that speaks for itself and to which no response is required. Except as expressly admitted, Berchen denies or lacks sufficient knowledge or information to either admit or deny the remaining allegations of Paragraph 1.

2. Admitted, upon information and belief.

1

3.     Berchen denies or lacks sufficient knowledge or information to either admit or deny the allegations of Paragraph 3.

4.     Berchen admits that she is a former IPC employee and that she resides at 468 Cedar Lane, Arden, NC 28704. Berchen avers that the Agreement is a document in writing that speaks for itself and to which no response is required. Except as expressly admitted, Berchen denies the allegations of Paragraph 4.

5.     Berchen admits that this Court has jurisdiction over this matter. Except as expressly admitted, Berchen denies the allegations of Paragraph 5.

6.     Berchen admits that venue is proper in this Court and that Berchen is a resident of Buncombe County. Except as expressly admitted, Berchen denies the allegations of Paragraph 6.

7.     With respect to Plaintiff's claims, denied.

8.     Admitted.

9.     Berchen admits that her role with IPC included business relationships with IPC's client medical facilities and clinicians. Except as expressly admitted, Berchen denies the allegations of Paragraph 9.

10.    Berchen admits that her employment with IPC terminated May 8, 2020. Berchen avers that the Agreement is a document in writing that speaks for itself and to which no response is required. Except as expressly admitted, Berchen denies the allegations of Paragraph 10.

11.    Berchen avers that the Agreement is a document in writing that speaks for itself and to which no response is required. Except as expressly admitted, Berchen denies the allegations of Paragraph 11.

12.    Denied.

13.    Denied.

14. Berchen lacks sufficient knowledge and information to either admit or deny the allegations of Paragraph 14 as the group of Inpatient Consultants clinicians are not sufficiently identified and therefore denies the same. Except as expressly admitted, Berchen denies the allegations of Paragraph 14.

15. Berchen lacks sufficient knowledge and information to either admit or deny the allegations of Paragraph 15 and therefore denies the same. Except as expressly admitted, Berchen denies the allegations of Paragraph 15.

16. Berchen lacks sufficient knowledge and information to either admit or deny the allegations of Paragraph 16 and therefore denies the same. Berchen admits, upon information and belief, that Dr. Tamara Chittenden's counsel contacted IPC's counsel. Berchen lacks sufficient knowledge or information as to the substance of the conversations between Dr. Chittenden and IPC's counsels. Except as expressly admitted, Berchen denies the allegations of Paragraph 16.

17. Berchen lacks sufficient knowledge and information as to statements by Dr. Chittenden's counsel to either admit or deny the allegations and therefore denies the same. Except as expressly admitted, Berchen denies the allegations of Paragraph 17.

18. Denied.

19. Denied.

20. Denied.

21. Berchen restates her responses to the above paragraphs as if fully set forth herein.

22. Berchen avers that the Agreement is a document in writing that speaks for itself and to which no response is required. Except as expressly admitted, Berchen denies the allegations of Paragraph 22.

23. Denied.

3

24.     Paragraph 24 calls for a legal conclusion to which no response is required.  Except as expressly admitted, Berchen denies the allegations of Paragraph 24.

25.     Paragraph 25 calls for a legal conclusion to which no response is required.  Except as expressly admitted, Berchen denies the allegations of Paragraph 25.

26.     Denied.

27.     Berchen avers that the Agreement is a document in writing that speaks for itself and to which no response is required.  Further, Paragraph 27 calls for a legal consultation to which no response is required.  Except as expressly admitted, Berchen denies the allegations of Paragraph 27.

28.     Berchen restates her responses to the above paragraphs as if fully set forth herein.

29.     Denied.

30.     Denied.

31.     Denied.

## FIRST AFFIRMATIVE DEFENSE
### (Failure of Consideration)

IPC's claims are barred for failure of consideration.

## SECOND AFFIRMATIVE DEFENSE
### (Invalidity and Unenforceability)

IPC's claims are barred because the contract at issue constitutes an unreasonable and overly broad restraint on Berchen and an unenforceable restraint of trade and is void and unenforceable under the public policy of this State.

## THIRD AFFIRMATIVE DEFENSE
### (Public Domain)

IPC's claims are barred because the alleged confidential information is publicly available and therefore not confidential.

4

## FOURTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

IPC's claims are barred, in whole or in part, by the doctrine of unclean hands, and because the balance of equities favors Berchen.

## FIFTH AFFIRMATIVE DEFENSE
### (Waiver and Estoppel)

IPC has waived, either expressly or impliedly, some or all of its claims and is estopped from pursuing some or all of its claims.

## SIXTH AFFIRMATIVE DEFENSE
### (Damages)

IPC is not entitled to recover damages from Berchen because (1) IPC cannot prove damages; (2) IPC has failed to mitigate its damages; (3) IPC's damages are speculative; and (4) some or all of IPC's damages, if any, were caused by its own conduct.

## SEVENTH AFFIRMATIVE DEFENSE
### (No Proximate Causation)

Berchen's actions were not a cause, the cause, the proximate cause, or a superseding or intervening cause of IPC's alleged damages.

## EIGHTH AFFIRMATIVE DEFENSE
### (No Injunctive Relief)

IPC's request for injunctive relief fails because any alleged injury to IPC is not immediate or irreparable and because an adequate remedy at law is available for any purported injury (the existence of which is denied).

## NINTH AFFIRMATIVE DEFENSE
### (Laches)

IPC's claims are barred, in whole or in part, by the doctrine of laches.

## TENTH AFFIRTANTIVE DEFENSE
### (Additional Defenses)

Berchen hereby reserves the right to amend her Answer to plead any additional answer or defenses that may be supported by law, facts, or circumstances, including without limitation, any defenses that Berchen becomes aware of through discovery or the litigation of this case.


## COUNTERCLAIMS

Defendant and Counterclaim Plaintiff, Berchen, hereby asserts these Counterclaims against Counterclaim Defendant, IPC The Hospitality Management Company, LLC ("IPC") to address the unlawful conduct for violation of the Fair Labor Standards Act of 1938, as amended by the Equal Pay Act of 1963, 29 U.S.C. § 206 *et seq.* ("Equal Pay Act") and for defamation *per se*. Counterclaim Defendant IPC has engaged in a pattern and practice of paying its female employees less that its comparable male employees. This is a flagrant example of unlawful pay practices.

### PARTIES, JURISDICTION, AND VENUE

1.    Kimberly Berchen is an adult individual and is a resident of Buncombe County, North Carolina.

2.    Upon information and belief, IPC is a Delaware limited liability company with a principal place of business in California.

3.    Jurisdiction and venue are proper in this Court.

### FACTS

4.    Counterclaim Plaintiff, Berchen, is a former employee of IPC.

5.    Berchen was hired with IPC in November 2015 and was promoted several times throughout her tenure.

6

6.　　　On or about July 22, 2019, Berchen was promoted to Vice President of Operations ("VPO") for the New England region.

7.　　　The New England region originally consisted of upstate New York, New Hampshire, Vermont, Massachusetts, and Connecticut and had approximately 350 providers across the states.

**Equal Pay Act**

8.　　　Berchen was informed in September 2019 that the New England region was being split and leadership had hired a new VPO who would take over upstate New York, which consisted of approximately half of the New England region's providers.

9.　　　The new VPO, a male, was hired and took over the new territory in or around October 1, 2019.

10.　　　The new male VPO was hired from outside IPC, meaning that he was a new hire for IPC.

11.　　　Upon information and belief, the new male VPO did not have experience on the provider side of medical provider placements in medical facilities. Indeed, upon information and belief, the new male VPO was previously a long-term care facility administrator.

12.　　　One duty of a VPO is to review payroll records for all clinical and nonclinical employees in the region.

13.　　　After the New England region was reorganized, Berchen was sent the payroll register and financial statements for the entire New England region, as she previously had been.

14.　　　The new male VPO had been added to the payroll register.

15.　　　While reviewing the payroll register, Berchen discovered that the new male VPO's starting annual salary was $25,0000 more per year than her annual salary.

7

16. When Berchen was offered the VPO position in July 2019, Matt Gray, Senior Vice President, told her that all VPO annual starting salaries were $135,000.

17. When Berchen learned that the male VPO's starting annual salary was $25,000 more than her annual salary, she contacted another female VPO, who also became a VPO in 2019, and learned that she was paid the same annual salary as Berchen, again $25,000 less than the male VPO's starting annual salary.

18. The female VPO confirmed that she was also told that all VPO's starting annual salaries were $135,000.

19. The morning after Berchen received the payroll register and financial statements, Matt Gray, her supervisor, called her and told her that she should not have had access to the male VPO's payroll information and acknowledged that the male VPO's starting annual salary was more that Berchen and the other female VPO's annual salaries.

20. At all relevant times, Berchen was qualified for her position.

21. At all relevant times, Berchen performed her job in a satisfactory fashion and received exemplary and exceeds expectations performance appraisals.

22. Berchen never received any write-ups, discipline, performance improvement plans, or other negative performance reviews or assessments.

23. Despite Berchen's qualifications and performance, Berchen was paid substantially less than her similarly situated male co-worker. The male VPO was paid substantially more than Berchen despite having similar or less qualifications and/or experience than Berchen.

24. Upon information and belief, the male VPO was paid substantially more than Berchen and the other female VPO because he was male.

8

25.     The disparity in pay between Berchen and the other female VPO, on the one hand, and the male VPO, on the other hand, is emblematic of IPC's pattern and practice of paying female VPO's less than similarly situated, or even less qualified, male VPO's.

26.     There is no reasonable rationale or justifiable basis for paying the male VPO more than Berchen.

27.     IPC failed to take any action to correct its unlawful pay practices.

28.     IPC did not remedy its unlawful pay practice.

29.     IPC terminated Berchen's employment on May 8, 2020, purportedly because Berchen's position was eliminated, however, the newly hired male VPO that was paid substantially more than Berchen was retained and given a portion of Berchen's territory.

30.     Berchen lost a considerable amount of compensation as a result of the unlawful pay practices complained of in this action.

31.     In addition, IPC's unlawful pay practices had a deleterious impact on Berchen's future earning potential because it is not uncommon in the industry for potential new employers to consider past compensation when making offers of employment.

32.     IPC's unlawful pay practices were willful and without justification.

33.     IPC's unlawful pay practices were the proximate and but for cause of Berchen's damages.

34.     IPC's unlawful pay practices were done in reckless disregard of Berchen's federally protected rights.

35.     As a result of IPC's unlawful pay practices, Berchen is entitled to actual, compensatory, liquidated, statutory, and punitive damages, pre-judgment and post-judgment

9

interest, reasonable attorneys' fees and the costs of the action, and such other, further, and different relief as the Court deems just and proper.

**Defamation**

36. Following IPC's termination of Berchen's employment, Berchen secured a subsequent position with Gaps Health, Inc. ("Gaps Health") in September 2020.

37. Berchen's position with Gaps Health is currently Vice President of Operations.

38. Upon information and belief, IPC is an affiliate of TeamHealth.

39. On or about December 1, 2020, counsel for Team Health, LLC, d/b/a TeamHealth ("TeamHealth") and its affiliate IPC, ("Counsel") made defamatory statements regarding Berchen via written letter to Perri Melnick, counsel for Gaps Health.

40. Counsel is an agent of IPC and TeamHealth, and IPC and TeamHealth are liable for Counsel's actions.

41. Specifically, IPC and TeamHealth through Counsel stated:

   a. Berchen "disclosed confidential TeamHealth information to Dr. Tamara Chittenden";

   b. Berchen's "use and disclosure is a direct breach of her separation agreement with IPC"; and

   c. Berchen has "also tortiously interfered with [TeamHealth's employment agreement with Dr. Chittenden]."

(collectively the "Statements").

42. The Statements were published to at least one person other than Berchen.

43. The Statements were false.

10

44.     The Statements impeached Berchen's reputation and personal character in her chosen profession and tended to subject Berchen to ridicule, contempt, and disgrace.

45.     IPC and TeamHealth made the Statements knowing they were false or failed to exercise ordinary care in determining whether the statements were false.

46.     Berchen has been injured by the Statements.

## COUNT ONE
### (Violation of the Equal Pay Act)

47.     Berchen realleges and incorporates by reference the previous paragraphs.

48.     IPC has violated the Equal Pay Act by providing Berchen with lower pay and compensation than a similarly situated male employee on the basis of her gender, even though Berchen performed similar duties requiring the same skill, effort, qualifications, and responsibility of her male counterpart.

49.     IPC subjected Berchen to discriminatory pay practices in violation of the Equal Pay Act.

50.     Berchen was not paid less than her male counterpart on the basis of seniority, merit, quantity, or quality of production, or a factor other than sex, and instead was paid less due to her gender.

51.     IPC was the cause of the unlawful conduct complained of in this action.

52.     The foregoing conduct constitutes a willful violation of the Equal Pay Act within the meaning of that statute.

53.     As a result of IPC's conduct as alleged in this Complaint, Berchen suffered damages, including but not limited to, lost earnings, lost benefits, and other financial loss, and is entitled to statutory, liquidated, and other damages.

54. IPC's unlawful conduct, as described in this Complaint, has been willful and intentional. IPC was aware of or should have been aware that the employment practices it undertook, as described herein, were unlawful. IPC has not made a good faith effort to comply with the Equal Pay Act.

55. As a result of IPC's willful and intentional conduct, Plaintiff has suffered damages in excess of twenty-five thousand dollars ($25,000.00), in an amount to be proven in trial, and is entitled to all damages claimed in this action.

## COUNT TWO
### (Defamation *per se*)

56. Berchen realleges and incorporates by reference the previous paragraphs.

57. IPC, through its agent, made and published the false Statements to at least one person other than Berchen.

58. The Statements impeached Berchen's reputation and personal character in her chosen profession and tended to subject Berchen to ridicule, contempt, and disgrace.

59. IPC made the Statements knowing they were false or failed to exercise ordinary care in determining whether the Statements were false.

60. Berchen has been damaged due to the Statements, for which IPC is liable, in an amount in excess of twenty-five thousand dollars ($25,000.00) to be proven at trial.

61. The Statements and actions were malicious and with wanton disregard for the truth, entitling Berchen to an award of punitive damages.

62. As a result, Berchen is entitled to recover from IPC general, compensatory, special, punitive, and nominal damages, and injunctive relief to cease the publication of false and defamatory statements against Berchen.

12

## PRAYER FOR RELIEF

WHEREFORE, Berchen respectfully requests that this Court grant her the following relief:

(a)  actual and compensatory damages for lost wages, benefits, entitlements, and all other damages suffered as a result of IPC's unlawful conduct;

(b)  actual and compensatory damages;

(c)  liquidated damages;

(d)  statutory damages;

(e)  punitive damages;

(f)  all damages allowable by law, statute or regulation;

(g)  pre-judgment and post-judgment interest;

(h)  reasonable attorneys' fees and costs of the action;

(i)  nominal damages, if other monetary damages are not awarded;

(j)  injunctive relief to cease any further or other defamation; and

(k)  all such other, further, or different relief as the Court deems just, proper, or equitable.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues permitted to be tried by a jury.

## THIRD-PARTY COMPLAINT

Third-Party Plaintiff, Berchen, hereby brings this Third-Party Complaint against Third-Party Defendant Team Health, LLC d/b/a TeamHealth for defamation *per se* and hereby alleges the following.

13

## PARTIES, JURISDICTION, AND VENUE

1.    Kimberly Berchen is an adult individual and is a resident of Buncombe County, North Carolina.

2.    Upon information and belief, TeamHealth is a Tennessee limited liability company with a principal place of business in Knoxville, Tennessee.

3.    Jurisdiction and venue are proper in this Court because TeamHealth's North Carolina counsel and agent made the defamatory statements complained of herein, and Berchen is a resident of this county.

## FACTS

4.    Following IPC's termination of Berchen's employment, Berchen secured a subsequent position with Gaps Health, Inc. ("Gaps Health") in September 2020.

5.    Berchen's position with Gaps Health is currently Vice President of Operations.

6.    On or about December 1, 2020, counsel for Team Health, LLC, d/b/a TeamHealth ("TeamHealth") ("Counsel"), on his clients' behalf, made defamatory statements regarding Berchen via written letter to Perri Melnick, counsel for Gaps Health.

7.    Counsel is an agent of TeamHealth, and TeamHealth is liable for Counsel's actions.

8.    Specifically, Counsel stated:

   a.    Berchen "disclosed confidential TeamHealth information to Dr. Tamara Chittenden";

   b.    Berchen's "use and disclosure is a direct breach of her separation agreement with IPC"; and

   c.    Berchen has "also tortiously interfered with [TeamHealth's employment agreement with Dr. Chittenden]."

14

(collectively the "Statements").

9.    The Statements were published to at least one person other than Berchen.

10.    The Statements were false.

11.    The Statements impeached Berchen's reputation and personal character in her chosen profession and tended to subject Berchen to ridicule, contempt, and disgrace.

12.    TeamHealth made the Statements knowing they were false or failed to exercise ordinary care in determining whether the statements were false.

13.    Berchen has been injured by the Statements.

## COUNT ONE
### (Defamation *per se*)

14.    Berchen realleges and incorporates by reference the previous paragraphs.

15.    TeamHealth, through its agent, Counsel, made and published the false Statements to at least one person other than Berchen.

16.    The Statements impeached Berchen's reputation and personal character in her chosen profession and tended to subject Berchen to ridicule, contempt, and disgrace.

17.    Counsel made the Statements knowing they were false or failed to exercise ordinary care in determining whether the Statements were false.

18.    Berchen has been damaged in an amount in excess of twenty-five thousand dollars ($25,000.00) due to TeamHealth's actions and conduct, for which TeamHealth is liable, in an amount to be proven at trial.

19.    The Statements and actions were malicious and with wanton disregard for the truth, entitling Berchen to an award of punitive damages.

15

20.     As a result, Berchen is entitled to recover from TeamHealth general, compensatory, special, punitive, and nominal damages, and injunctive relief to cease the publication of false and defamatory statements against Berchen.

## PRAYER FOR RELIEF

WHEREFORE, Berchen respectfully requests that this Court grant her the following relief:

(a)      actual and compensatory damages for lost wages, benefits, entitlements, and all other damages suffered as a result of TeamHealth's unlawful conduct;

(b)      actual and compensatory damages;

(c)      liquidated damages;

(d)      statutory damages;

(e)      punitive damages;

(f)      all damages allowable by law, statute or regulation;

(g)      pre-judgment and post-judgment interest;

(h)      reasonable attorneys' fees and costs of the action;

(i)      nominal damages, if other monetary damages are not awarded;

(j)      injunctive relief to cease any further or other defamation; and

(k)      all such other, further, or different relief as the Court deems just, proper, or equitable.

## JURY TRIAL DEMAND

Third-Party Plaintiff demands a trial by jury on all issues permitted to be tried by a jury.

16

This is the 12th day of March, 2021.

**STRIANESE HUCKERT LLP**

Tamara L. Huckert, N.C. Bar No. 35348
Christopher Strianese, N.C. Bar. No. 46918
3501 Monroe Rd.
Charlotte, NC 28205
tamara@strilaw.com
chris@strilaw.com
Telephone: 704-966-2101
*Attorneys for Kimberly Berchen*

## CERTIFICATE OF SERVICE

I certify that I have served the foregoing **ANSWER AND COUNTERCLAIMS AGAINST IPC THE HOSPITALIST MANAGEMENT COMPANY, LLC and THIRD-PARTY COMPLAINT AGAINST TEAM HEALTH LLC** on the other parties to this action by placing a copy thereof enclosed in a postage prepaid properly addressed wrapper in a post office or official depository under the exclusive care and custody of the United States Postal Service, addressed to:

> Benjamin P. Fryer
> FordHarrison LLP
> 6000 Fairview Rd.
> Ste. 1415
> Charlotte, NC 28210
> *Attorneys for IPC*

This is the 12 <sup>H</sup> day of March, 2021.

> Tamara Huckert
> Christopher Strianese
> Strianese Huckert LLP
> 3501 Monroe Rd.
> Charlotte, NC 28205
> tamara@strilaw.com
> Telephone: 704-966-2101
> *Attorneys for Kimberly Berchen*

18

# STATE OF NORTH CAROLINA

_____ Buncombe _____ County

File No.
21-CV-00098

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff* <br> Kimberly Berchen | |
| *Address* <br> c/o Strianese Huckert LLP, 3501 Monroe Rd. | **CIVIL SUMMONS** <br> ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| *City, State, Zip* <br> Charlotte NC 28205 | |
| **VERSUS** | G.S. 1A-1, Rules 3 and 4 |

| *Name Of Defendant(s)* <br> Team Health, LLC | *Date Original Summons Issued* |
|---|---|
| | *Date(s) Subsequent Summons(es) Issued* |

---

**To Each Of The Defendant(s) Named Below:**

| *Name And Address Of Defendant 1* <br> Team Health, LLC <br> c/o The Prentice-Hall Corp. System, Inc., Registered Agent <br> 2908 Poston Ave. <br> Nashville TN 37203-1312 | *Name And Address Of Defendant 2* <br> Team Health, LLC <br> Attn: Legal Dept. <br> 265 Brookview Centre Way, Ste. 400 <br> Knoxville TN 37919 |
|---|---|

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)* <br> Tamara Huckert <br> Strianese Huckert LLP <br> 3501 Monroe Rd. <br> Charlotte NC 28205 | *Date Issued* | *Time* ☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ *Deputy CSC* ☐ *Assistant CSC* ☐ *Clerk Of Superior Court* | |

---

| ☐ ENDORSEMENT (ASSESS FEE) <br> This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ *Deputy CSC* ☐ *Assistant CSC* ☐ *Clerk Of Superior Court* | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 6/16
© 2016 Administrative Office of the Courts

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid<br>$ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 6/16
© 2016 Administrative Office of the Courts